**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **HYPERQUERY LLC,**<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**LG ELECTRONICS U.S.A., INC.,**<br><br>        **Defendant.** | **Case No. 2:23-cv-00007-JRG-RSP** |

## DEFENDANT LGEUS'S MOTION TO DISMISS UNDER FED R. CIV. P. 12(b)(6)

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION                                                                        1

II.  BACKGROUND                                                                          2

III. LEGAL STANDARD                                                                      5

IV.  HYPERQUERY'S DIRECT INFRINGEMENT ALLEGATIONS DO NOT PLAUSIBLY
ACCUSE LG SMARTPHONES                                                                    6

   A.   Direct Infringement of the '918 Patent                                          6

      1.   The Plain Claim Language And Complaint Make Clear That HyperQuery's
Infringement Allegations Are Implausible                                                 7

      2.   The Specification Confirms That HyperQuery's Allegations Are Implausible     9

   B.   Direct Infringement Of The '611 Patent                                          10

V.   HYPERQUERY'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED        14

VI.  HYPERQUERY'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE
BECAUSE AMENDMENT WOULD BE FUTILE                                                        16

VII. CONCLUSION                                                                          17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMG Prods., Inc. v. Dirt Cheap, LLC*,
No. 6:18-CV-00267-JDK, 2019 WL 2484260 (E.D. Tex. Mar. 12, 2019),
*report and recommendation adopted sub nom. AMG Prods., Inc. v. Fry's
Elecs.*, No. 6:18-CV-00267-JDK-JDL, 2019 WL 1578053 (E.D. Tex. Apr. 11,
2019) ..................................................................................................................6, 15

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ......................................................................5, 8, 9

*Bowmar Archery LLC v. VIP Veteran Innovative Prods. LLC*,
No. 1:22-CV-00346-RP, 2023 WL 28438 (W.D. Tex. Jan. 3, 2023) ...............16, 17

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) .......5, 8, 9

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) .........15

*De La Vega v. Microsoft Corp.*,
No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)...........7

*Diem LLC v. BigCommerce, Inc.*,
No. 6:17-CV-186, 2017 WL 9935521 (E.D. Tex. May 11, 2017).............................5

*Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana*,
No. 2:16-CV-00417-JRG-RSP, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017)........10

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ....15

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)..............................................................................5

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016)............................................................................13

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
751 F.3d 368 (5th Cir. 2014) ................................................................................17

*Packet Intel. LLC v. NetScout Sys., Inc.*,
965 F.3d 1299 (Fed. Cir. 2020)...............................................................................7

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
    No. 4:19-CV-876-SDJ, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ...........................13, 14

*Roa v. City of Denison*,
    No. 4:16-CV-00115-ALM-CAN, 2017 WL 9251672 (E.D. Tex. Aug. 29,
    2017), *report and recommendation adopted sub nom. Roa v. City of Denison*,
    No. 4:16-CV-00115-ALM-CAN, 2017 WL 4675062 (E.D. Tex. Oct. 18,
    2017) .................................................................................................................................17

*Ruby Sands LLC v. Am. Nat'l Bank of Texas*,
    No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) .........................13, 17

*Stragent, LLC v. BMW of N. Am., LLC*,
    No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)...................5, 14

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) .............................................................................................10

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant LG Electronics U.S.A. Inc. ("LGEUS" or "Defendant") hereby respectfully moves to dismiss Plaintiff HyperQuery LLC's ("HyperQuery" or "Plaintiff") Complaint ("Complaint," Dkt. 1).

## I.   INTRODUCTION

HyperQuery's infringement allegations against LG's smartphones are fatally flawed and warrant dismissal because the two asserted patents are, as the inventors admitted to overcome prior art during prosecution, "directed to a server in the network," and not a "user/mobile device."[1] Indeed, every claim of both patents requires "receiving" inputs and/or queries *from* "user devices," and thus cannot be directed to the user devices themselves.  Yet, the Complaint fails to identify any LG component at all (let alone any LG server component) that "*receives*" the required inputs and queries.  Instead, HyperQuery only alleges infringement by LG's smartphones, even though the Complaint explicitly identifies them as the "user devices."  Tellingly, much of the evidence cited in the claim charts appended to the Complaint is from *Google*, not *LGEUS*, regarding the server-side operation of the Google Play Store and Google Search functionalities.  LGEUS has no involvement in or control over such Google systems, and because HyperQuery's Complaint does not plausibly allege that any *LG* smartphone meets every limitation of even one claim, its direct infringement claims must be dismissed.

HyperQuery's indirect infringement claims are equally deficient and should also be dismissed.  Indeed, as explained above, the Complaint fails to allege (and cannot allege) any plausible underlying act of direct infringement.  Nor does it aver a plausible basis for the requisite specific intent to sustain an induced infringement allegation.

---

[1]  Although the applicant only made this statement during the prosecution of the '918 Patent, the Asserted Patents are related and share common priority through numerous continuation and continuation-in-part applications, and through several common provisional applications. *See* Dkts. 1-1 and 1-3.

Finally, given the server-side nature of the claims, any attempt to amend the Complaint against LGEUS would be futile, which justifies dismissing the Complaint with prejudice.

## II.    BACKGROUND

On January 6, 2023, HyperQuery filed the instant case alleging that LGEUS infringes U.S. Patent Nos. 9,529,918 (the "'918 Patent") and 9,639,611 (the "'611 Patent") (together, "the Asserted Patents") through its smartphones[2] that include a "pre-installed Google Play Store"[3] and "pre-installed Google Search engine," respectively.  Dkt. 1, ¶¶ 12, 21; Dkt. 1-2 at 1; Dkt. 1-4 at 1.

Google Play Store[4] is alleged to be an application on a smartphone ("Google Play Store App") that allows users to "download apps" to use on their devices.  Dkt. 1-2 at 1-2.  While the smartphones are the "accused products," HyperQuery further alleges that the Google Play Store App "requires [sic] internet connection (a communication network) for searching and downloading of the apps."  *Id.* at 3.  According to HyperQuery, Google Play Store App also relies on Google's servers, which "store[] applications that are displayed on the [Google] Play Store" App.  *Id.* at 11; *see also id.* at 13 ("Google Uses About 900,000 Servers.").

With respect to the Google Search engine ("Google Search"), the Complaint likewise alleges that it is accessible on the accused smartphones and allows users to find "webpages or other

---

[2]  While HyperQuery's Complaint purports to allege infringement by "at least the Defendant products identified in the charts incorporated into this Count below (among the 'Exemplary Defendant Products')" (Dkt. 1, ¶¶ 12, 21), the charts accompanying the Complaint refer only to "LG smartphones (such [sic] LG Wing 5G)," and the LG Wing 5G is the only product identified. *See* Dkt. 1-2 at 1; Dkt. 1-4 at 1.

[3]  HyperQuery's Complaint interchangeably capitalizes and uncapitalizes Google Play **S**tore and Google **S**earch.  Defendant has capitalized all reference to the "Google Play Store" and "Google Search" regardless of whether the quoted passage capitalizes these phrases.

[4]  The Google Play Store is described, along with Apple's "App Store," as a known "application repository," so any accusation that it infringes would seem dubious at best.  *See* Dkt. 1-1 at 1:44-45, 3:45-46.

content" by using Google's "robust systems to present the most helpful information in response to your query."  Dkt. 1-4 at 1-2.  According to HyperQuery, Google Search resides on Google's servers because, "[w]hen a user enters a query, [Google's] machines search the index for matching pages and return the results [Google] believe[s] are the highest quality and most relevant to the user."  *Id.* at 3; *see also id.* at 5-6 (referencing Google's "database," "crawlers," "systems," "Search index," and "machines").

The Complaint alleges infringement of "one or more claims" of each of the Asserted Patents, but provides specific allegations only for independent Claim 1 of each.[5]  Dkts. 1-2 ('918 Patent claim chart for Claim 1) and 1-4 ('611 Patent claim chart for Claim 1).  As discussed in further detail below, the asserted independent claims from both Asserted Patents are method claims that require, *inter alia*, "receiving" inputs and queries from a "user device."  Dkt. 1-1 at 9:56-10:11; Dkt. 1-3 at 9:8-24.

| '918 Patent, Claim 1 (Dkt. 1-1 at 9:56-10:11) | '611 Patent, Claim 1 (Dkt. 1-3 at 9:8-24) |
|---|---|
| 1. A method, implemented by a computing device, for causing at least one application to be downloaded via a communication network, comprising:<br>    **receiving, via the communication network, an input search query from a user device**;<br>    determining the search intent based on the input search query;<br>    selecting, based on the search intent, at least one application from at least one applications central repository;<br>    causing an icon corresponding to the at least one selected application to be displayed on a display of the user device;<br>    **receiving via the communication** | 1. A method for providing a suitable web address to a user device, comprising:<br>    **receiving a query from the user device**;<br>    identifying at least one configuration parameter of the user device;<br>    determining a search intent based on the received query;<br>    selecting at least one information resource from a plurality of information resources to serve the search intent;<br>    identifying a web address for each of the at least one selected information resource; and<br>    modifying at least one identified web address to generate a suitable web address based on the identified web address, the search intent, and the at |

---

[5]  Without providing specific allegations, Plaintiff also appears to assert dependent Claim 8 of the '611 Patent, which merely adds that the "configuration parameter" of Claim 1 can be, *inter alia*, a "type" of "user device."  Dkt. 1-4 at 1.

| | |
|---|---|
| **network an input from the user device** indicating a particular one of the at least one selected application; causing establishment of a direct communication link between the user device and a location hosting the particular one of the at least one selected application in response to an input received from the user device; and causing initiation of a download of the particular one of the at least one selected application to the user device over the direct communication link. | least one configuration parameter, wherein accessing the at least one information resource via the suitable web address allows optimal display of the information provided by the information resource on the user device. |

These claims are not directed to user devices that ***send*** queries and inputs, such as via a smartphone as HyperQuery alleges, but are instead directed to backend network systems/servers that ***receive*** queries and inputs from such user devices.  Indeed, during the prosecution of U.S. Patent Application No. 14/103,500, which issued as the '918 Patent and shares a priority chain with the '611 Patent, the Examiner rejected claim 1 (which issued as asserted claim 1 of the '918 Patent) under 35 U.S.C. § 103 in view of U.S. Patent Publication No. 2007/0082707 ("Flynt"), which was "directed to a user/mobile device."  Ex. 1 (May 12, 2016, Applicant Arguments in Response to Non-Final Rejection) at 7.  To traverse the objection, the applicant argued:

> Flynt is directed ***to a user/mobile device***.  That can be seen throughout the Flynt disclosure, as indicated by the its [sic] title 'Tile Space User Interface for Mobile Devices.'  By contrast, Applicant's invention as claimed is directed ***to a server in the network***. …

*Id*. (emphasis added).

Notably, the Complaint does not allege that LGEUS owns, maintains, or provides any such network systems/servers.

With respect to indirect infringement, the Complaint provides the following boilerplate allegation: "**Induced Infringement**. At least since being served by this Complaint and

4

corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the [Asserted Patents], literally or by the doctrine of equivalents, by selling Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the [Asserted Patents]."  Dkt. 1, ¶¶ 16, 25 (emphasis in original). It then incorporates by reference its infringement claim chart for each Asserted Patent as purported evidence of indirect infringement.  *Id.*, ¶¶ 17-18 and 26-27.

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss allegations of direct infringement, a plaintiff must "provid[e] facts sufficient to create a plausible inference that each element of the claim is infringed by the accused products."  *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-186 JRG-JDL, 2017 WL 9935521, at *2 (E.D. Tex. May 11, 2017).  Mere "conclusory statements" that an accused product meets the claim limitations are insufficient.  *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/ Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.").

Indirect infringement requires an underlying act of direct infringement.  *See Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697, at *7 (E.D. Tex. Mar. 3, 2017), *report and recommendation adopted*, No. 6:16-CV-00446-RWS, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017) ("[W]here there has been no direct infringement, there can be no induced infringement under § 271(b)"); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009) ("A finding of inducement requires a threshold finding of direct infringement.")

(citations omitted).  Additionally, "to state a claim for induced infringement, a plaintiff must allege facts to plausibly support the assertion that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement." *AMG Prods., Inc. v. Dirt Cheap, LLC*, No. 6:18-CV-00267-JDK, 2019 WL 2484260, at *3 (E.D. Tex. Mar. 12, 2019), *report and recommendation adopted sub nom. AMG Prods., Inc. v. Fry's Elecs.*, No. 6:18-CV-00267-JDK-JDL, 2019 WL 1578053 (E.D. Tex. Apr. 11, 2019).

## IV.   HYPERQUERY'S DIRECT INFRINGEMENT ALLEGATIONS DO NOT PLAUSIBLY ACCUSE LG SMARTPHONES

HyperQuery's direct infringement allegations should be dismissed because the Complaint does not, because it cannot, plausibly allege that the accused LG smartphones meet each limitation of the asserted claims.

### A.   Direct Infringement of the '918 Patent

HyperQuery's only specific direct infringement allegations for the '918 Patent pertain to Claim 1.  HyperQuery generally accuses LG smartphones of infringing (Dkt. 1, ¶ 12; Dkt. 1-2 at 1), but in its chart for Claim 1 attached to the Complaint, only identifies the same accused LG smartphones as the "user device" recited in the claim.  Dkt. 1-2 at 1 ("LG smartphones (such [as] LG Wing 5G) ('user device') has pre-installed Google Play Store which is an online store that provides different apps such as gaming, movies, … to the user.  The user can download apps from the [Google] Play Store to their devices.").

No "user device," including LG smartphones, can plausibly infringe Claim 1, because the claim recites steps that are performed ***by*** a "computing device," such as a server, using input ***from*** a user device.  To be sure, claim 1 recites a method "***implemented by a computing device**, for causing at least one application to be downloaded via a communication network,*" with steps that can only plausibly occur on the server side.  Dkt. 1-1 at 9:55-10:11.  According to the plain claim

6

language, the "user device"—which, HyperQuery alleges is an LG smartphone—may be a component that interacts with servers performing the claimed methods, but cannot itself perform the method of Claim 1. *See, e.g.*, Dkt. 1-1 at 9:55-10:11 claim 1 (reciting "receiving . . . an input search query *from a user device*;" "receiving . . . an input *from the user device*").[6]  Because HyperQuery's infringement allegations ignore the nature of such claim requirements in an attempt to capture LG user devices, those allegations must be dismissed.

> ### 1. The Plain Claim Language And Complaint Make Clear That HyperQuery's Infringement Allegations Are Implausible

First, the claims themselves make clear that the accused LG smartphone "user device" cannot plausibly infringe.  Every claim of the '918 Patent (including the unasserted system claims) recites "receiving, via the communication network, an input search query from a user device." Dkt. 1-1 at 9:56-60 (independent Claim 1); *id.* at 11:5-9 (independent Claim 11: "receive via the communication network an input search query from a user device").  In addition, every claim of the '918 Patent requires "receiving via the communication network an input from the user device indicating a particular one of the at least one selected application." Dkt. 1-1 at 10:1-3 (independent Claim 1); *id.* at 11:22-26 (independent Claim 11: "responsive to an input received from the user device via the communication network").  Logically, each of these limitations requires that the

---

[6]  Separately, LGEUS cannot directly infringe because a method claim is "not directly infringed by the mere sale of an apparatus capable of performing the claimed process." *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314 (Fed. Cir. 2020) (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)).  To the extent HyperQuery attempts to rely on LGEUS "testing" the smartphones, HyperQuery has failed to allege that the accused LG smartphones practice each limitation of the asserted claims.  *See De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *4-5, n.7 (W.D. Tex. Feb. 11, 2020) (dismissing direct infringement allegations because "Plaintiff has not articulated any basis that would establish that either Google or Microsoft performed all of the elements of the claim when it tested the accused products.").

"input" be *received by* the claimed "computing device."[7]  To state it another way, the recited "user device" cannot *receive* an "input" *from itself*, and certainly not *via the communication network*. And the Complaint does not make any such allegations.  Indeed, while HyperQuery generally accuses LG smartphones of performing the method steps of claim 1, no LG component, smartphone or otherwise, is identified as performing the "receiving" steps.

Second, the Complaint only confirms the implausibility of HyperQuery's allegations against *LGEUS*.  At most, the Complaint and claim chart appear to point to the Google Play Store – Google's "online store" – as performing the "receiving" steps.  Dkt. 1-2 at 1-3 ("Google Play store requires internet connection (a communication network) for searching and downloading of the apps on the LG smartphones").  To be clear, the claim chart does not explicitly describe the Google Play Store, or any other component, as performing the "receiving" steps.  Instead, the claim chart simply excerpts extensively from *Google* documentation describing how Google operates the server-side of the Google Play Store, including how to "*return* relevant content to users" (*Id.* at 4), and how Google uses "[a]bout 900,000 Servers" (*id.* at 6).  HyperQuery fails to identify any *LG* device that performs the "receiving" steps, and at most appears to allege that performance of those steps are done by Google systems or servers, thereby rendering its allegations against LGEUS an impossibility.  *See Chapterhouse*, 2018 WL 6981828 at *4 ("While the Complaint asserts that the Spently app is 'integrated' into the Shopify POS, there is no assertion that Defendant owns or controls the Spently app; nor is there any assertion that Defendant directs, controls, or has any other relationship with the unknown owner of the Spently app."); *see also*, *Bot M8*, 4 F.4th at 1354 (affirming dismissal where "the factual allegations are actually inconsistent

---

[7]  In claim 11, the device from which the "input search query" is received is not named but is simply the "system" of that claim.

with and contradict infringement").

The Complaint suffers from the same deficiency for additional limitations of claim 1, which also rely on ***non-LG smartphone*** components for alleged performance of the method steps:

*"determining the search intent based on the input search query"* – For this limitation, the antecedent basis to "the input search query" is to "an input search query ***from a user device***." Dkt. 1-1 at 9:59-60. Further, HyperQuery explicitly alleges that Google Play Store servers "***determine[]*** the search intent based on the user input query." Dkt. 1-2 at 4. Indeed, HyperQuery quotes a google.com webpage discussing how *Google*, rather than LGEUS, allegedly performs this operation: "We [Google] may determine user intent by implicit or explicit signals . . . We do this by deciphering the words typed and trying to determine if the user is looking for a specific app." *Id.* HyperQuery does not allege that this functionality occurs on LG's smartphones.

*"selecting, based on the search intent, at least one application from at least one applications central repository"* – For this limitation, HyperQuery explicitly alleges that "the Play Store provides different apps related to messaging **from the Google server**." *Id.* at 5 (emphasis added); *see also id.* at 6 (alleging that a "Google **server** stores different applications that are displayed in the Play Store" and citing third party blogpost about the Google Play Store ("How Fast is a Google server? Google Uses About 900,000 Servers.")). In other words, the Complaint identifies a Google component as performing this "selecting" step, and does not identify any LG component as performing it.

## 2. The Specification Confirms That HyperQuery's Allegations Are Implausible

That HyperQuery is misapplying the claims to LG smartphones is confirmed by the intrinsic record. As an initial matter, the specification discloses a server-side process, not a process running on a user device. *See, e.g.*, Dkt. 1-1 at 3:22-51 (explaining, with reference Fig. 1, that the

invention utilizes server-side infrastructure, such as a "database 170," "search server 130," "network 120," "application repositories 150," etc.; *see also* 5:15-17 (explaining, with reference to Fig. 2, that the "search query" "is received from the user device.  The query is received at a search server," *i.e.* the "receiving" occurs at a server, not at the user device, which does the sending).

Moreover, the applicant admitted during prosecution that the asserted claims are "***directed to a server in the network," not a "user/mobile device.***"  Ex. 1 (May 12, 2016, Applicant Arguments in Response to Non-Final Rejection) at 7.[8]  Simply put, Claim 1 is not directed to a user device, including the accused LG's smartphones.  *Id.*

**B.  Direct Infringement Of The '611 Patent**

HyperQuery's Complaint fares no better with respect to the '611 Patent.  Just like the '918 Patent, HyperQuery accuses LG smartphones of infringing (Dkt. 1, ¶ 21; Dkt. 1-4 at 1), but again, in its chart for Claim 1 attached to the Complaint, identifies the accused LG smartphones as the "user device" recited in the claim.  Dkt. 1-4 at 1 ("LG smartphones (such [as] LG Wing 5G) (user device) has pre-installed Google Search engine that …").  However, as with the '918 Patent, every claim of the '611 Patent (including the unasserted system claims) also requires "receiving a query from the user device."  Dkt. 1-3 at 9:9 (independent Claim 1), 10:21 (independent Claim 12

---

[8]  "In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (emphasis added).  Courts in this District regularly take judicial notice of patent prosecution histories while evaluating Rule 12(b)(6) motions to dismiss.  *See, e.g.*, *Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana*, No. 2:16-CV-00417-JRG-RSP, 2017 WL 631195, at *2 (E.D. Tex. Jan. 30, 2017), *report and recommendation adopted*, No. 2:16-CV-00417-JRG-RSP, 2017 WL 617673 (E.D. Tex. Feb. 15, 2017), *aff'd*, 712 F. App'x 1007 (Fed. Cir. 2018).

("receive a query from the user device")).  Again, it is illogical that the accused LG smartphones could be "the user device" and perform the claimed method of "receiving a query *from* the user device."

The claims of the '611 Patent, like the claims of the related '918 Patent, are plainly directed to a network system/server that receives queries from user devices, not the user devices themselves.  Indeed, Claim 1 is unambiguously directed to a "method for *providing* a suitable web address *to a user device*," as opposed to being directed to the user device itself.  *Id.* at 9:7-8 (emphasis added).  HyperQuery has failed to plausibly allege that the accused LG smartphones meet at least these server-side limitations of Claim 1 of the '611 Patent.

Tellingly, outside of including a picture of the LG Wing 5G smartphone on the first page of HyperQuery's claim charts, as an alleged "user device," nearly every other piece of evidence is documentation from Google on how the server-side Google Search operates, including HyperQuery's support for the "receiving" limitation itself.  *See* Dkt. 1-4 at, *e.g.*, 2 (citing google.com webpage for "receiving limitation": "Google uses its robust systems to present the most helpful information in response to your query."); 3 (citing google.com webpage: "When a user enters a query, [Google's] machines search the index for matching pages and return the results [Google] believes are the highest quality and most relevant to the user."); 5-6 (citing google.com webpages and referencing Google's "database," "crawlers," "systems," "search index," and "machines.").

HyperQuery's allegations of infringement for additional limitations of claim 1 similarly point to Google functionality, rather than LGEUS:

"*selecting at least one information resource from a plurality of information resources to serve the search intent*" – This limitation requires **serving** the "search intent."  HyperQuery relies

exclusively on google.com webpages in support of this limitation, and in particular points to Google "[s]erving search results" by using Google "machines" to "search the index for matching pages and return the results we believe are the highest quality and most relevant to the user." Dkt. 1-4 at 6. There is no allegation that this step could be performed by LG smartphones, nor could there be given the server-side nature of the limitation.

"*modifying at least one identified web address*" – For this limitation, HyperQuery alleges that "***Google*** serves different websites . . . to different devices." *Id.* at 8 (emphasis added). Thus, HyperQuery explicitly relies on Google's server-side system, not LG's smartphones, as allegedly performing the claimed "modifying" step. *See also id.* at 4 ("Google Search deciphers the user's query," "Google Search accesses multiple web pages and databases," "Once Google finds a suitable result to the user's query, it presents the user with the web page . . . and its associated web address").

Consistent with the claim language and HyperQuery's allegations, the specification of the '611 Patent confirms that it is directed to server-side systems that receive queries from user devices, as opposed to the user device, just as with the '918 Patent. *See* Dkt. 1-3 at, *e.g.*, 3:48-51 ("The user devices 110 are configured to submit queries to a server 130 which is also connected to the network 120. The server 130 is configured to send the received queries to and from an intention detection unit."); Fig. 1 (including numerous server-side components such as a "network 120," "server 130," "database 150").

*    *    *    *    *

HyperQuery's allegations appear to be premised on a fundamental misreading of the claims. Because the claims are directed to server-side functionality, such as "receiving" queries

12

from user devices, HyperQuery has not and cannot plausibly allege that the accused LG smartphones, *i.e.* "user devices," meet the claims of the '918 Patent or the '611 Patent.

Notably, there is no allegation of joint or divided infringement of these claims, nor any allegation that LGEUS operates Google servers, the Google Play Store, or Google Search. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) ("A claim of joint infringement . . . requires pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party."). Nor can there be.

As HyperQuery has failed to plead facts sufficient to allege that the accused LG smartphones meet at least the "receiving," "selecting," and/or "determining" limitations of Claim 1 of the '918 Patent and the "receiving," "selecting," and/or "modifying" limitations of Claim 1 of the '611 Patent, HyperQuery's direct infringement claims must be dismissed. *See Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *4 (E.D. Tex. Nov. 17, 2020) ("The incoherence of Qwikcash's allegations is further demonstrated by its failure to provide a plausible allegation that Blackhawk's system performs at least the initial PIN-creation procedure in claim 17."); *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016) (The Amended Complaint makes clear that the asserted claims of the '633 Patent require "a transfer device," "a reader," and "a display"; [plaintiff] definitively represents that such claim limitations are met by a mobile device or the components of a mobile device. However, assuming all facts pleaded in the Amended Complaint are true, [plaintiff] makes no factual allegations that even remotely suggest that CNB, a bank,

13

makes, uses, offers to sell, or sells mobile devices.") (internal citations omitted).[9]

## V.   HYPERQUERY'S   INDIRECT   INFRINGEMENT   CLAIMS   SHOULD   BE DISMISSED

HyperQuery's Complaint also alleges indirect infringement, in the form of inducement through only a single boilerplate allegation:  "Defendant has actively, knowingly, and intentionally continued  to  induce  infringement  of  the  [Asserted  Patents],  literally  or  by  the  doctrine  of equivalents,  by  selling  Exemplary  Defendant  Products  to  their  customers  for  use  in  end-user products in a manner that infringes one or more claims of the [Asserted Patents]."  Dkt. 1, ¶¶ 16, 25.  This type of unsupported inducement allegation is routinely dismissed.

As  an  initial  matter,  HyperQuery's  indirect  infringement  claims  must  be  dismissed because,  as  explained  above,  it  has  failed  to  plead  facts  to  allege  an  underlying  act  of  direct infringement.  This alone warrants dismissal of HyperQuery's indirect infringement claims.  *See Stragent*, 2017 WL 2821697, at *7 ("As a threshold matter, Stragent's indirect infringement claims fail because the Complaint has not plausibly pled that the AUTOSAR-compliant products directly infringe  the  asserted  claims.")  (*report  and  recommendation  adopted*,  2017  WL  2832613); *Qwikcash*, 2020 WL 6781566, at *5 ("Where a plaintiff has not adequately pleaded an underlying act of direct infringement, theories of indirect infringement must be dismissed.").

Separate and apart from HyperQuery's failure to plausibly plead an underlying act of direct infringement, HyperQuery's induced infringement allegations must be dismissed because they do not plausibly show that LGEUS intended for its customers to infringe the Asserted Patents.  At best,  in  other  parts  of  the  Complaint  separate  from  its  indirect  infringement  allegations, HyperQuery simply alleges that LGEUS "distribute[s] product literature and website materials

---

[9]   Moreover,  while  detailed  infringement  contentions  could  not  cure  insufficient  pleadings, HyperQuery's infringement contentions do not contain any additional evidence or allegations beyond what was cited in the Complaint, confirming the futility of the allegations.

inducing end users and others to use its products in the customary and intended manner that infringes the [Asserted Patents]," with a citation to the accompanying claim charts in support of direct infringement.  Dkt. 1, ¶¶ 15, 24.  The problem with HyperQuery's allegation, however, is that the only ***LG*** "product literature and website materials" cited in the Complaint is a generic LG user manual which merely indicates that certain applications from Google come pre-installed on the accused LG smartphones.[10]  To be sure, the remaining evidence cited in HyperQuery's claim charts is to webpages from Google or other third parties.  *See* Dkts. 1-2 and 1-4.  There is no dispute that LGEUS is not Google, and HyperQuery is unable to show that LGEUS has any involvement in authoring or distributing the Google documentation cited in the Complaint.  Simply put, HyperQuery cannot use materials published by Google to aver that LGEUS has induced its customers (*i.e.* smartphone users) to infringe the Asserted Patents, particularly where there is no dispute that LGEUS's customers cannot plausibly infringe the Asserted Patents because the customer does not "receive" an input or query from a user device, for example.  *See AMG*, 2019 WL 2484260, at *3-4 (E.D. Tex. Mar. 12, 2019) (dismissing induced infringement allegations against Dirt Cheap where the complaint alleged inducement by citation to pre-packaged product instructions provided by third parties) (*report and recommendation adopted sub nom.* 2019 WL

---

[10]   Of course, separate and apart from the other deficiencies in HyperQuery's inducement allegations, "generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim."  *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015).  HyperQuery's general citation to an LG product manual and threadbare allegations that parrot the elements of an induced infringement cause of action cannot save its inducement claims. *See Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677, at *5 (W.D. Tex. Nov. 28, 2017) (dismissing induced infringement claims, despite plaintiff's citation to "instructive pop-up window detailing how to update the device's operating software," because plaintiff's allegations "do not allege sufficient facts to support a plausible inference that Acer had the specific intent to induce its customers to infringe on either patent.").

1578053).[11]

Moreover, HyperQuery has not alleged that LGEUS is somehow ***inducing Google*** to provide its own Google Play Store and Google Search functionalities.  Nor could it.  Indeed, nothing in the cited LG material indicates that LGEUS is inducing the direct infringement by Google to operate its own backend network and servers in an allegedly infringing manner, or that LGEUS has any control over Google or its systems

For each of these reasons, HyperQuery's indirect infringement allegations for the Asserted Patents must be dismissed.

## VI.   HYPERQUERY'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE

HyperQuery should not be granted leave to amend its Complaint because amendment would be futile.  *See Bowmar Archery LLC v. VIP Veteran Innovative Prods. LLC*, No. 1:22-CV-00346-RP, 2023 WL 28438, at *4 (W.D. Tex. Jan. 3, 2023), *report and recommendation adopted*, No. 1:22-CV-346-RP, 2023 WL 2311988 (W.D. Tex. Jan. 18, 2023) (citing *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) ("Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith.")).  As explained above, each independent claim of the Asserted Patents (including the unasserted system claims) requires numerous limitations, such as "receiving" inputs and queries from "user devices," that are performed by network systems or

---

[11] There is another glaring problem with HyperQuery's allegations of induced infringement. HyperQuery pleads that LGEUS had "actual knowledge of infringement" only as of service of the Complaint, and therefore limits its inducement claims to alleged LGEUS activity occurring "since being served by this Complaint."  Dkt. 1, ¶¶ 14, 16, 23, 25.  However, LG closed its mobile business entirely in 2021, and stopped selling mobile phones long before the Complaint was filed. Thus, no activity for alleged inducement could have plausibly occurred since HyperQuery filed the Complaint on January 9, 2023.  Notably, the Complaint does not provide any citations showing that LGEUS was distributing "product literature and website materials" to "end users" at the time the Complaint was filed.  Dkt. 1, ¶¶ 15, 24.

servers, not by user devices like the accused LG smartphones.  Accordingly, there is no amendment that could cure HyperQuery's deficient infringement allegations on LG's smartphones, making any attempted amendment futile.  *See id.* at *4 (denying leave to amend where plaintiff did not "describe[] any additional facts it would plead to cure the defects in its Complaint"); *see also Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."); *Roa v. City of Denison*, No. 4:16-CV-00115-ALM-CAN, 2017 WL 9251672, at *2 (E.D. Tex. Aug. 29, 2017), *report and recommendation adopted sub nom. Roa v. City of Denison*, No. 4:16-CV-00115-ALM-CAN, 2017 WL 4675062 (E.D. Tex. Oct. 18, 2017) ("And, in any event, leave to amend the added allegations and claims would be futile: the allegations simply do not cure the deficiencies raised in Defendants' Motion to Dismiss."); *Ruby Sands*, 2016 WL 3542430 at *5 (dismissing case with prejudice where a "serial litigant . . . not only failed to plead plausible claims of direct infringement but also repeatedly filed (and failed to correct) pleadings containing indirect infringement allegations replete with extraneous language clearly lifted from some unrelated case.").

## VII.   CONCLUSION

For the foregoing reasons, HyperQuery's Complaint should be dismissed with prejudice.

Dated:  March 31, 2023

Respectfully submitted,

*/s/ Shaun W. Hassett*
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
POTTER MINTON, P.C.
102 N. College Ave., Suite 900
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

*Attorneys for LG Electronics U.S.A. Inc.*